**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7307 SW Beveland Street, Suite 200
Portland, Oregon 97223
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

Attorneys for Plaintiff
**Denice Spencer**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DENICE SPENCER**, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**GREATER ALBANY PUBLIC SCHOOL DISTRICT 8J**, an Oregon Public School District, **SCOTT SMITH**, in his individual and official capacity,<br><br>　　　　Defendants. | Case No. 6:20-cv-2187<br><br>**COMPLAINT** for:<br><br>1. Violation of Plaintiff's Constitutional Rights (42 U.S.C. § 1983),<br><br>2. Unlawful Retaliation in Violation of ORS 659A.199<br><br>3. Unlawful Retaliation in Violation of ORS 659A.203<br><br>4. Wrongful Termination<br><br>5. Breach of the Implied Covenant of Good Faith and Fair Dealing<br><br>DEMAND FOR JURY TRIAL |

1 – COMPLAINT

For her complaint, plaintiff Denice Spencer ("Plaintiff") respectfully alleges as follows:

## I. JURISDICTION AND VENUE

1. This is an action bringing a federal claim under 28 U.S.C. § 1331.

2. Venue is proper in Oregon's federal court in this division, pursuant to 28 U.S.C. § 1391 (b)(1) and (2), because the events giving rise to Plaintiff's claims arose within this district and the defendant Greater Albany Public School District 8J (the "School District") resides in this district for purposes of venue and jurisdiction.

## II. THE PARTIES

3. Plaintiff was and is an individual residing at all material times in Polk County, Oregon.

4. The School District is and was at all material times an entity legally residing in Linn County, Oregon.  The School District's employees named or referenced in this complaint acted under color of law.  The School District is responsible for the actions of its officers, employees, and agents acting within the scope of their employment or duties.

5. Defendant Scott Smith ("Smith") was at all material times an individual residing, on information and belief, in Linn County, Oregon.  Plaintiff understands Smith currently resides in Arizona.  At all material times, Smith was an employee, agent, and officer of the School District.  Smith participated in, condoned, aided, abetted, and/or incited the unlawful discrimination against Plaintiff as alleged herein contrary to ORS 659A.030 (1)(g).  Smith is sued in his individual and official capacity.

6. The School District and Smith are referenced collectively as "Defendants."

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Initial Employment with Defendants

7. Plaintiff is a teacher with more than 20 years of experience in a variety of educational settings. With a career including time in rural Alaska, at the Central School District in Independence, Oregon, and in Oregon's Salem-Keizer School District, Plaintiff worked in a variety of alternative education settings, including programs dedicated to at-risk youth (including children who were neglected, abused, had English as a second language, etc.) and teen parents. She also worked for a time at a gang halfway house. However, and as Defendants knew, she was not trained as a Special Education teacher.

8. Her career resulted in overwhelmingly positive performance reviews throughout these experiences and a tremendously positive influence on her students.

9. Plaintiff was hired as an employee of Defendants in September 2018 under a contract to work as a Middle School Alternative Education Program teacher to serve the entire middle school student body in the School District.

10. When the School District created its alternative education program, it based the program at the Fairmount School. This school was a Behavior Intervention School (and labeled as such) and also housed Special Programs before also serving as the alternative education program location.

11. Before accepting the position, Plaintiff was led to believe that her position focused on general education. She specifically asked if her responsibilities would involve teaching special education students; this was a concern to her because she was not trained to teach such students. She was repeatedly assured that her position would be a general education position.

3 – COMPLAINT

12. In reality, she was hired to serve an extraordinarily challenging body of students. Some came from behavior programs in which they failed, and others had failed in their conventional classroom setting; some fit both categories. Most had been expelled and were not allowed on any school property other than the Fairmount School.

13. Despite numerous obstacles, Plaintiff excelled in all respects as a teacher and a member of the staff. She was motivational, knowledgeable, and passionate, drawing on her many years of experience.

### B. Plaintiff Experiences Extensive Violence by Her Students

14. On Plaintiff's first day, a student threatened to kill her. The death threat was not in jest.

15. Almost all of the students assigned to Plaintiff were suited to programs dedicated to dealing with particularly bad behavior. Despite this, Defendants foisted dangerous students into her classroom despite the purpose of the Alternative Education Program. Only one student, to Plaintiff's knowledge, voluntarily enrolled in Plaintiff's program, thinking it was a genuine alternative education program. Her mother later pulled her out of the program out of safety concerns.

16. Most of Plaintiff's students would best be described as behavior students. Many of the students engaged in criminal behaviors and had mental health issues, including conduct and disruptive behavior disorders. Many were on, or had been on, probation. Virtually none were placed in the program voluntarily.

17. Plaintiff witnessed desks being turned over and thrown across the room, chairs and garbage cans being kicked and thrown, staff being verbally and physically threatened and abused and objects being thrown at them.

18. Plaintiff experienced this in a very personal manner. She witnessed/experienced students exhibiting behavior like:

- Death threats against her,
- Threats of other imminent violence against her,
- Physical contact with her,
- Students threatening to kill other students,
- Windows broken and rooms vandalized repeatedly during the same day,
- Destruction of school property, including computers, plumbing, toilets, and many other items and fixtures,
- Graffiti/signs associated with gangs and white supremacy,
- Extensive profanity,
- Students barricading themselves off from staff and other students,
- Staff's failure to respond to emergency situations,
- Egregious sexual harassment of female students,
- Constant defiance, and
- Student threats to get Plaintiff fired.

19. The area in which Plaintiff taught had no video cameras to monitor or capture these situations. During Plaintiff's first staff meeting, days after being hired, Plaintiff raised the issue of the lack of cameras a number of times. Another faculty member suggested that Defendants orchestrate the purchase of cameras, but no action was taken.

20. This student behavior came as particularly shocking to Plaintiff since she had been assured by Smith that any student exhibiting inappropriate behaviors would be removed

from the program.  Instead, he had previously assured her that the special needs her students would exhibit were apathy, depression, and/or academic frustration – and *not* aggression.

21.     In reality, Smith tolerated this behavior, telling Plaintiff that the students were better off in her classroom than at home.  Smith's intentions were clear – he intended that Plaintiff, despite her amazing credentials, serve as a babysitter to the area's troubled kids.

22.     Though they needed and deserved help, Smith encouraged Plaintiff to just "keep them there."  He limited her to two hours of actual schoolwork, claiming they were incapable of any more, and encouraged her to fill in the rest of the school day with entertainment, like showing movies.  Smith forbade Plaintiff from using textbooks and failed to provide adequate computer access.

23.     Despite this, Plaintiff did her best to actually teach these students who – regardless of their family of origin issues or mistakes – deserved to be taught, guided, and treated with respect.  Defendants made this impossible.

24.     Some of Plaintiff's fellow teachers feared reporting the students' bad behavior for fear of losing their positions.

25.     Plaintiff would not have accepted the position if she had understood its true nature.

C.     **Plaintiff Experiences Retaliation and False Allegations About Her Teaching**

26.     Despite Plaintiff's complaints, Smith continued to pack students with behavioral issues into her classroom, making the job ever more difficult and dangerous.

27.     Certain students made false allegations against Plaintiff to the administration.  Smith admitted that he knew the allegations were false.  Her reputation was tarnished among

6 – COMPLAINT

staff, the community, and students, yet she was provided with any due process or other opportunity to meaningfully respond to false allegations.

28. She complained about these behaviors and was repeatedly assured by Smith that the threats and conduct were not serious and the students not dangerous. He had no reasonable basis for this belief.

29. Eventually, after repeatedly complaining about safety, Smith banned Plaintiff from staff meetings, forbade her from necessary communications with faculty, probation officers, and other normal means of contact with stakeholders in the students' education.

30. These restrictions had their desired effect – Plaintiff was ostracized and isolated. In essence, Defendants communicated to Plaintiff that things would continue as they previously had and nothing would change.

31. Other teachers similarly situated who did *not* complain were not so treated. One teacher even told Plaintiff that she feared reporting or complaining about safety and behavior issues for fear of losing her job.

32. Plaintiff was told that she had false ideas about staff and student safety. Her concerns were dismissed, her teaching style criticized, and she was micromanaged and spied upon at Smith's direction. She at no time received the resources or support she needed to succeed in the program – let alone be safe at work.

33. During Plaintiff's final one-on-one meeting with Smith, he became aggressive and agitated towards her. He berated her and acted hostile and abusive.

7 – COMPLAINT

D.      **Plaintiff's Constructive Discharge and Defendants' Ongoing Retaliation**

34.     Unable to tolerate Defendants' hostility and the threats to her safety and profession, and certain that she would be fired and her teaching license undermined, Plaintiff was constructively discharged on March 13, 2019.

35.     In retaliation for her safety complaints and her reasonable belief that Defendants were engaging in unlawful activity and activity that constituted mismanagement, gross waste of funds, and abuse of authority, Smith and others of the School District on information and belief subsequently blacklisted her and continue to do so.

36.     On information and belief, Defendants made false claims to Plaintiff's prospective employers about her teaching and interactions with students and faculty – including claims of abuse.

37.     Despite her amazing skills and resume, Plaintiff has been unable to secure a new position despite her prior outstanding job successes and history of working in the Willamette Valley.

38.     Plaintiff – having left all of her prior jobs on good terms – was even rejected for a suitable position at the Salem-Keizer School District, where she had previously worked for five years.

39.     At the end of the 2018-2019 school year, the School District moved the Alternative Education Program into its regular school setting, away from the extremely difficult environment at Fairmount School. In contrast to the students assigned to Plaintiff, the School District is now vastly better guiding students appropriately to the program.

### III.   DAMAGES

40. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer economic damages, including loss of earnings, benefits, job opportunities, and other employment benefits, in an amount continuing to accrue to be determined at trial.

41. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered emotional distress, mental pain and anguish, embarrassment, loss of dignity and reputation, sleeplessness, humiliation, and loss of enjoyment of life.

42. Plaintiff also seeks reasonable attorney fees and costs in an amount to be proven at trial.

### IV.   CLAIMS FOR RELIEF

#### FIRST CLAIM FOR RELIEF

#### (Violations of Plaintiff's Constitutional Rights (42 U.S.C. § 1983))

#### (Against All Defendants)

43. Plaintiffs incorporate paragraphs 1 through 39 by reference.

44. Plaintiff had a reasonable expectation of continued employment as a teacher. Though her contract stated its term would be a year, it would have, under normal circumstances, been renewed and made open-ended.

45. Because of Defendants' termination of Plaintiff's teaching position and the hostile work environment they created and tolerated, Plaintiff was deprived of rights guaranteed to her under the Fourteenth Amendment to the United States Constitution, as applied to state and local governments under the Fourteenth Amendment, in one or more of the following ways:

    a.    Defendants compelled Plaintiff to resign her valuable teaching position under threat of termination and ongoing harassment. Plaintiff did not have a valid opportunity to defend herself against the false and ridiculous allegations made against her.

    b.    Defendant compelled Plaintiff to work in a hostile and dangerous work environment that a reasonable person in her position would be unable to tolerate.

46. The deprivation of Plaintiff's constitutional rights was pursuant to the official policies, practices, and/or customs of Defendants, which are neither neutral nor of general applicability.

47. Defendants' actions were not the least restrictive means of accomplishing any legitimate, let alone compelling, governmental interest.

48. As a direct result of the misconduct of the defendants, Plaintiff suffered economic and noneconomic damages as alleged in paragraphs 37 through 39.

49. Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### (Unlawful Retaliation Under ORS 659A.199)

### (Against All Defendants)

50. Plaintiff incorporates paragraphs 1 through 46 by reference.

51. The defendants retaliated against Plaintiff, and continue to retaliate against Plaintiff, as alleged above.

52. This retaliation impacted the terms, conditions, and/or privileges of Plaintiff's employment and employment up to the date of the filing of this complaint.

53. The defendants retaliated against Plaintiff by taking adverse employment actions against her, namely by subjecting her to bullying and a hostile work environment.

54. As a result of these actions, Plaintiff seeks an award of damages as alleged in paragraphs 37 through 39, including but not limited to attorney fees pursuant to ORS 659A.885.

### THIRD CLAIM FOR RELIEF

### (Unlawful Retaliation Under ORS 659A.203)

### (Against All Defendants)

55. Plaintiff incorporates paragraphs 1 through 51 by reference.

56. The defendants retaliated against Plaintiff as alleged above.

57. This retaliation impacted the terms, conditions, and/or privileges of Plaintiff's employment and employment up to the date of the filing of this complaint.

58. The defendants retaliated against Plaintiff by taking adverse employment actions against her, namely by subjecting her to bullying and a hostile work environment.

59. As a result of these actions, Plaintiff seeks an award of damages as alleged in paragraphs 37 through 39, including but not limited to attorney fees pursuant to ORS 659A.885.

### FOURTH CLAIM FOR RELIEF

### (Wrongful Discharge)

### (Against All Defendants)

60. Plaintiff incorporates paragraphs 1 through 56 by reference.

61. The School District intentionally created or maintained a hostile and dangerous work environment to which Plaintiff was subjected, and those conditions were so intolerable that Plaintiff was constrictively discharged. The School District knew or should have known that Plaintiff would leave her employment based on this hostile and dangerous work environment.

62. The School District's actions and motivations for those actions were wrongful.

63. As a result of these actions, Plaintiff seeks an award of damages and fees as alleged in paragraphs 37 and 38.

## FIFTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against the School District)

64. Plaintiff incorporate paragraphs 1 through 60 by reference.

65. Every contract contains an implied covenant of good faith and fair dealing.

66. An implied term of Plaintiff's contract with the School District was that she would be able to do her job in a safe environment free from harassment and bullying. Another implied term was that the School District would not prevent Plaintiff from being able to do her job.

67. The School District breached the implied covenant by allowing an unsafe work environment and subjecting her to harassment and bullying. The School District also breached the implied covenant by preventing her from doing her job.

68. These actions caused Plaintiff to suffer significant economic damages as alleged in paragraph 37.

## V. DEMAND FOR JURY TRIAL

69. Plaintiff demands a trial by jury.

## VI. PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff prays for judgment as follows:

71. Economic damages in an amount to be proven at trial,

72. Noneconomic damages in an amount to be proven at trial,

73. Pre- and post-judgment interest on all amounts due to Plaintiff, and

74. An award of attorney fees and costs as allowed by law and proven at trial, and

75. Any other relief the Court deems just and equitable.

Respectfully submitted November 23, 2020.

*/s/ Micah D. Fargey*
**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7307 SW Beveland Street, Suite 200
Portland, Oregon 97223
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

**Attorneys for Plaintiff**
**Denice Spencer**